UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TERESITA A. CANUTO,

    Plaintiff,

    v.

REP. NANCY PELOSI, *et al.*,

    Defendants.

Civil Action No. 19-1791 (JEB)

**MEMORANDUM OPINION**

*Pro se* Plaintiff Teresita Canuto's Complaint alleges that a "paramilitary of illegal aliens" repeatedly sexually assaulted her over the course of five years, mainly while she was drugged or unconscious. She seeks to hold State and Federal representatives accountable for failing to enact legislation that could have — theoretically — sheltered her from the alleged assaults. Because the Complaint strings together a series of farfetched allegations, which Defendants' conduct could not have caused, this Court grants the pending Motions to Dismiss for lack of subject-matter jurisdiction.

**I.    Background**

Plaintiff alleges that, between 2014 and 2019, she was "besieged by illegal aliens with sexual assaults and batteries" in her California home while "she and [her] family were put into [a] deep sleep or unconscious[ness]." ECF No. 1 (Pl. Statement of Facts), ¶ 1. She claims that a "paramilitary of illegal aliens," id., ¶ 24, that "w[as] affiliated to the group responsible [for] the Sri Lanka Bombing of the Catholic Church," ECF No. 9 (Supplemental Complaint), ¶ 6, repeatedly assaulted her on "a scheduled basis." Pl. SOF, ¶ 14. She believes that the attacks

1

must have been an organized effort, as "this type of domestic terrorism . . . would not be possible without somebody financing or paying the expenses" of the alleged attacks. Id. Canuto says that she later "realized . . . that the task of sexual assaults was transferred to illegal aliens who were accommodated [and] assisted by [her] neighbors." Id., ¶ 7.

To support her theory, Plaintiff points to parking patterns around her apartment: "At times, the whole parking area inside was full of many cars/trucks . . . [that] stayed for [a] night after plaintiff was sexually assaulted [and then] would be gone." Supp. Compl., ¶ 4. "[O]ther illegal aliens that come[] from other states . . . were involved," as shown by the fact that "there were cars that surged in the apartment complex . . . and stayed for days sometimes a week with . . . plate licenses from other states." Pl. SOF, ¶ 14. Canuto also alleges that she "was stalked . . . by many civilians with stickers of U.S. Army and U.S. Navy . . . at the rear of their vehicles." Id., ¶ 7. Allegedly, this "paramilitary of illegal aliens" "communicate[d] to each other through the use of stickers attached at the back of their cars." Id., ¶ 24.

Plaintiff claims that "many illegal aliens were also follow[ing her] whenever [she] went." Id., ¶ 22. For instance, "after plaintiff was attacked sexually, later plaintiff began to be tailgate[d] by a vehicle along th[e] way in the road. Then sexual assault happened again." Supp. Compl., ¶ 6. She was also "intimidated" by "a middle eastern feature[d] male adult . . . accompanied [by] . . . a young Hispanic female adult" in a "brand new SUV (Range Rover)" after he "wave[d her] on and did a gesture to look up at him. And after [she] looked up at him, he began dancing half of []his body and right arm while still driving . . . [and] he gave [her] a thumbs up sign and went ahead of [her]." Pl. SOF, ¶ 21.

The specifics of the alleged assaults remain unclear. As evidence that they occurred, Canuto cites myriad injuries including that her "left eyebrow [was] shaved" and she had "cuts or

2

laceration[s] in body parts." ECF No. 1 (Complaint) at 4. Additionally, "the attacker le[ft] remnants of his act" after the sexual assaults by "revers[ing her] underwear," "fix[ing] the sheet . . . of her couch," and "fix[ing] [her] credit or debit cards nicely in her wallet." Pl. SOF, ¶ 18. Plaintiff described the in-home assaults thus:

> Skills in carpentry w[ere] used as a weapon by illegal aliens in penetrating or trespassing the residence of plaintiff. Adult in size and height of pygmies are also used to climb the windows, penetrate the ceiling and enter[] the vent. Then he would open the main door of the apartment to let the attacker come[ ]in and attack[] the plaintiff in [a] deep sleep.

Id., ¶ 22. In one instance, Plaintiff alleges that a "man that followed her in the parking lot of Vons Supermarket was the suspect" in a specific assault. Id., ¶ 13. As proof, she "enclosed evidence of [a] receipt from Vons Supermarket." Id. Plaintiff alleges that she was unable to catch any of her attackers after "put[ting up] a video camera" in her home because "the people also involved in the planned attack . . . were able to manipulate the records of video and stopped the recording during plaintiff['s] . . . attack[] at night while in deep sleep." Supp. Compl., ¶ 3.

As to the named Defendants — members of Congress and State lawmakers — Plaintiff claims that they "negligen[tly] . . . allow[ed] illegal aliens" to infringe on U.S. sovereignty "by establishing their own paramilitary" in California. See Pl. SOF, ¶ 24. She now seeks $20,000,000 in damages for each alleged assault, totaling $1,200,000,000 in relief. See Compl. at 6.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(1), Plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear her claims. See Lujan v. Defs. of Wildlife, 504 U.S. 555, 561 (1992); Harris v. Sebelius, 932 F. Supp. 2d 150, 151 (D.D.C. 2013). A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional

authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Pleadings by *pro se* plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972).

## III. Analysis

In filing separate Motions to Dismiss, the members of Congress and California Governor Gavin Newsom articulate myriad arguments. The Court need look only to subject-matter jurisdiction, which it lacks because: (1) Plaintiff's claims are "patently insubstantial," (2) she has no standing, and (3) even had her claims been pled under the Federal Tort Claims Act, she failed to exhaust her administrative remedies.

### A. Patently Insubstantial Claims

On rare occasions, a court may dismiss a case *sua sponte* for lack of subject-matter jurisdiction if a complaint is "'patently insubstantial,' presenting no federal question suitable for decision." Best v. Kelly, 39 F.3d 328, 330 (D.C. Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 n.6 (1989)). This standard requires that the "claims be flimsier than 'doubtful or questionable' — they must be 'essentially fictitious.'" Id. (quoting Hagans v. Lavine, 415 U.S. 528, 537–38 (1973)). Claims that fall into this category include "bizarre conspiracy theories, any fantastic government manipulations of [the] will or mind, [and] any sort of supernatural intervention." Id. As a general rule, this procedural vehicle is "reserved for complaints resting on truly fanciful factual allegations," while "12(b)(6) dismissals cull legally deficient complaints." Id. at 331 n.5.

Plaintiff's claims boil down to her belief that a "paramilitary of illegal aliens" funded and enforced a systemic regime of sexual assault against her while she was asleep or unconscious. See Pl. SOF, ¶¶ 7, 14, 24. Standing alone, such a naked assertion presents many reasons for

4

doubt. Here, moreover, Plaintiff's evidence claiming to prove the existence of such a regime consists of nothing more than day-to-day occurrences — *e.g.*, parking patterns, roadway encounters, bumper stickers, and grocery receipts. Id., ¶¶ 5, 13, 14, 21, 22. Because Plaintiff relies solely on "fanciful factual allegations" to support her claims, Best, 39 F.3d at 331 n.5, her suit presents "no federal question suitable for decision." Id., at 330.

B.    No Standing

Even if her factual assertions were not fantastical, Plaintiff lacks standing. Because "standing is an essential and unchanging part of the case-or-controversy requirement of Article III," Lujan, 504 U.S. at 560, finding that a plaintiff has standing is a necessary "predicate to any exercise of [the Court's] jurisdiction." Fla. Audubon Soc'y v. Bentsen, 94 F.3d 658, 663 (D.C. Cir. 1996) (citing Lujan, 504 U.S. at 560). At its "irreducible constitutional minimum," the doctrine requires a plaintiff to prove three elements: (1) an injury in fact, (2) a causal relationship between the injury and defendants' challenged conduct, and (3) the injury's redressability. Lujan, 504 U.S. at 560–61; see also Ord v. District of Columbia, 587 F.3d 1136, 1140 (D.C. Cir. 2009) (same). Here, Governor Newsom points out that Plaintiff has failed to satisfy the second prong — causation. See ECF No. 15 (Def. Newsom MTD) at 3–5. The Court agrees.

For there to be a sufficient causal connection, an injury must be "fairly traceable to challenged conduct of the defendant." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016) (emphasis added). An injury that "results from the independent action of some third party not before the court" will not suffice. Allen v. Wright, 468 U.S. 737, 757 (1984) (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 36, 42 (1976)). Here, Plaintiff does not allege that any of the Defendants assaulted her. Her causal hook is that Defendants "disregarded" that "U.S. citizens are [being] killed and raped" and failed to "create[] a remedy that would be favorable to

5

the safety of the people in the United States." Pl. SOF, ¶ 24. Yet there is no allegation that Defendants had any role in assisting the theoretical rapists in, *e.g.*, entering the country illegally. In addition, it is "substantially more difficult" to establish standing when the alleged injury arose because of the government's failure to regulate a third party, as is the case here. Lujan, 504 U.S. at 562 (quoting Allen, 468 U.S. at 758). Plaintiff's allegations fall well short of this mark.

   C.   FTCA

Even if Canuto had named the United States as Defendant, as opposed to individual legislators, her tort claims would still not survive the jurisdictional standard set out in the Federal Tort Claims Act. "[S]uits for damages against the United States under the common law must be brought pursuant to the limited waiver of sovereign immunity in the FTCA." Benoit v. USDA, 608 F.3d 17, 20 (D.C. Cir. 2010). Sovereign immunity "is jurisdictional in nature." FDIC v. Meyer, 510 U.S. 471, 475 (1994); see also Ali v. Rumsfeld, 649 F.3d 762, 775 (D.C. Cir. 2011) (failure to exhaust administrative remedies in FTCA case jurisdictional). In order to obtain a waiver of such immunity, a plaintiff must "exhaust[] his administrative remedy before filing suit." Benoit, 608 F.3d at 20.

To satisfy the exhaustion requirement, a plaintiff must first present her claim to the appropriate federal agency within two years of the claim's accrual. See 28 U.S.C. § 2401(b). Plaintiff does not assert that she approached any federal agency with her complaints; she has thus taken no steps towards exhaustion. Even if she had identified the FTCA as the source of this Court's jurisdiction, consequently, she still fails to meet its prerequisites.

**IV.   Conclusion**

For these reasons, the Court will dismiss Plaintiff's Complaint for lack of subject-matter jurisdiction. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: December 4, 2019